# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WAYNE J. OWENS,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　**Case No. 6:12-cv-1686-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for Supplemental Security Income benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

## Procedural History

Plaintiff protectively filed an application for Social Security Income ("SSI") on June 3, 2010, alleging he became disabled on July 1, 2009 (R. 169). The application was denied initially and on reconsideration, and Plaintiff sought and received an administrative hearing. The Administrative Law Judge ("ALJ") issued a decision on December 16, 2011, finding that Plaintiff was not disabled (R. 14-23), and the Appeals Council denied Plaintiff's Request for Review (R. 1-6), making the December 2011 decision the final decision of the Commissioner.

Plaintiff timely filed his complaint in this action, and the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. The matter has been fully briefed and the case is now ripe for review pursuant to 42 U.S.C. § 1383(c)(3).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to "emphysema/disc in neck problem" and back pain (R. 139).

*Summary of Evidence*

Plaintiff was forty years old at the time of the ALJ's decision (R. 34), with a ninth grade education and past relevant work experience as a caterer assistant, houseman, cook, auto detailer, preparation cook, and barber (R. 34, 47-48).

The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert ("the VE"), written forms and reports completed by Plaintiff and his mother, and opinions from examining and non-examining consultants. By way of summary, the ALJ determined that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), low back pain, and cervical pain (20 CFR 416.920(c) (R. 16); and the record supports this uncontested finding. The ALJ determined that through the date of the decision, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 16). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a):

> sit, stand, and walk for 6 hours in an 8-hour workday with normal breaks but may require changing positions hourly to either standing or sitting, momentarily, at or around the work area. The claimant could occasionally balance, stoop, kneel, crouch, crawl, and climb. However, he should never climb ladders, ropes, or scaffolds and should avoid concentrated exposure to temperature extremes, vibrations and fumes, odors, dust, gases and poor ventilation. The claimant should also avoid working with dangerous moving machinery and at heights.

(R. 16). The ALJ determined that Plaintiff could not return to his past relevant work (R. 20); however, with the assistance of the VE, the ALJ found that other work existed in significant numbers that Plaintiff could perform (R. 21-22), and therefore, the ALJ found Plaintiff was not disabled.

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises several issues in his brief, which are addressed in the context of the five step evaluation sequence used by the Commissioner.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R.

§ 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Plaintiff has raised objections to the formulation of the RFC (steps two and three), where the burden of persuasion rested with Plaintiff, and the determination that there are other jobs that Plaintiff could perform (step five), where the burden shifts to the Commissioner.

*The formulation of the RFC*

Plaintiff contends that "the ALJ erred in determining that the claimant has the residual functional capacity to perform sedentary work with additional non-exertional limitations after failing to consider all the pertinent medical evidence and relying on the opinions of state agency physicians who did not have all of the evidence before them when rendering their opinions." (Brief, p. 8). Specifically, Plaintiff contends that the ALJ: 1) makes "no mention" of a July 15, 2011 MRI of the cervical spine (R. 541) and fails to state all of the findings of a 2009 MRI; 2) gave weight to the opinion of a Single Decision Maker; 3) gave weight to consultative opinions which were formulated prior to the July 2011 MRI report; and 4) misinterpreted the examining consultant's opinion that

Plaintiff could "stand, walk and sit for six hours in an eight-hour workday with normal breaks." (R. 485).  Upon review, the Court is unpersuaded.

As noted by the Commissioner in her brief, the ALJ did not "ignore" the July 15, 2011 MRI (Exhibit 16F of the administrative record), but made explicit reference to it.  *See* R. 20 ("the undersigned considered claimant's subjective pain complaints as well as the MRI in Exhibit 16F, which shows severe stenosis at the cervical spine.").  Indeed, the ALJ *credited* the MRI as "support[ing] a valid impairment capable of producing pain" (R. 20), but found that the medical treatment records preceding and following the MRI did not establish an impairment lasting greater than 12 months (R. 20), noting:

> Medical records from Hill Orthopedic Center, reflect the claimant was treated on July 26, 2011, for injuries resulting from a slip and fall on June 24, 2011, approximately one month prior to treatment. The claimant complained of shocking, burning, and shooting neck pain that radiated into the buttocks and shooting neck pain with radiation into the left should region and numbness caused by lying down. Despite the claimant's pain complaints, his physical examination revealed good motor strength in all planes of neck movement and moderate tenderness of the trapezius muscles and lumbar spine. X-rays ofthe left shoulder, thoracic spine, lumbar spine, and left knee were all negative for acute deformity (Exhibit l4F/6). The claimant was assessed neurovascularly intact with the following diagnostic impression: left elbow contusion, cervical, lumbar, and thoracic sprain strain, left shoulder impingement, and left knee sprain. The claimant was treated with light chiropractic adjustment, muscle stimulation, and ice packs (Exhibit l4F/l, 2). The claimant's subsequent treatment records document his improvement with chiropractic adjustments and modalities. Specifically, on October 21, 2011, the claimant reported his condition was improving and on October 25, 2011, he reported feeling better with increased endurance (Exhibit l6F/19, 20).
>
> The undersigned notes that the claimant's documented medical treatments in Exhibits l4F and l6F fail to meet the criteria for disability under l6l4(a)(3)(A) of the Social Security Act. Specifically, the claimant's injury occurred in June 2011, which does not meet the 12 month prescribed period for a disability. Moreover, his medical records establish only mild to moderate findings of tenderness, which does not support a findings that the condition could be expected to result in death or could be expected to last for a continuous period of not less than 12 months.

(R. 19). As for the 2009 MRI, it, too, was explicitly referenced and discussed by the ALJ (R. 17-18). As the ALJ considered and discussed both MRI's and substantial evidence supports her findings, the Court finds no error.

Plaintiff next objects to the weight given by the ALJ to the opinions of state agency consultants. The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)

The Court finds no support for Plaintiff's contention that the ALJ gave weight to the opinion of a non-medical consultant (single decision maker). The administrative record includes reports from Thomas Peele, M.D., Namib Kirmani, M.D., Maxine Rudolph, PhD, Robert Schilling, PhD., and Desarae Stills, single decision maker. The ALJ stated:

> As far as the opinion evidence, the undersigned gives weight to the findings and opinions of the state agency **medical consultant** because it is consistent with the overall medical evidence documenting minimal findings on diagnostic imaging and overall normal findings on physical examination (Exhibit 4F & 8F). The **medical consultant's** findings are consistent with the findings of Dr. Perdomo, which were based on objective medical findings in including physical examination, observations, muscle strength testing, and range of motion tests (Exhibit 4F).
>
> In sum, the above residual functional capacity assessment is supported by the medical records from Florida Hospital and Orlando Regional Healthcare System, Central Florida Medical and Chiropractic Center, and Hill Orthopedic Center; the consultative evaluation of Dr. Perdomo; the physical residual functional capacity assessments and psychiatric review technique from the State's agency **medical consultants**, and the observations and testimony received by the undersigned at the hearing held on November 14, 2011.

(R. 20 - emphasis added). As noted on the residual functional capacity assessment form used by the state agency (R. 508), a single decision maker is *not* a medical consultant, and the ALJ makes no mention of reliance on any opinion from a single decision maker.

Plaintiff next objects that the opinions of the medical consultants were rendered without the benefit of the 2011 MRI. This is true, but does not constitute error. As Judge Chappell has found:

> There is no requirement that a treating or non-treating physician's report be made only after considering all medical evidence in the record. Likewise, the ALJ is not forbidden from considering a medical evaluation simply because the doctor did not have access to medical evidence that was submitted two years after the evaluation. As long as the ALJ considers all the "relevant evidence" and substantial evidence supports his determination, there is no error on the part of the ALJ. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005) (holding that there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as it is clear that the ALJ considered the Plaintiff's medical condition as a whole).

*Gibson v. Astrue*, No. 2:10–cv–44–FTM–29SPC, 2011 WL 307693, *8 (M.D. Fla. Jan. 6, 2011) (noting that the ALJ is required to consider all relevant evidence that appears in the record, "but this requirement is not applied to doctor's whose reports are considered by the ALJ"), *report and recommendation adopted*, 2011 WL 307690 (M.D. Fla. Jan 28, 2011). A review of the ALJ's decision here shows that she considered the MRI, as noted above. No error is shown.

Plaintiff's last contention with respect to the formulation of the RFC is the ALJ's interpretation of the opinion of the examining consultant that Plaintiff could "stand, walk and sit for six hours in an eight-hour workday with normal breaks." (R. 485). Plaintiff contends that "[t]his should be read by meaning that Mr. Owens could only do all three of these activities for a total of six hours out of an eight-hour workday."

Dr. Perdomo stated that Plaintiff could "stand, walk, **and** sit," not "stand, walk, **or** sit," thus indicating that Plaintiff could perform each of these tasks for six hours "in an eight-hour workday with normal breaks" (R. 485). If Plaintiff's work capacity totaled only six hours regardless of activity,

-7-

the reference to the eight hour workday with normal breaks would be superfluous.  More importantly, however, even if Dr. Perdomo did, in fact, opine that Plaintiff was so limited, there is no showing that the failure to fully credit that part of his opinion was error.  Dr. Perdomo was not a treating source, so his opinion is not presumptively entitled to controlling weight.  *See McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (noting that certain opinions "are not entitled to deference because as one-time examiners they were not treating physicians.").  While the ALJ was required to consider and evaluate the opinion, the record shows that she did so, giving credit to the mild examination findings.[1] To the extent Plaintiff's interpretation of Dr. Perdomo's opinion is inconsistent with the RFC, there is error only if the RFC is not otherwise supported by substantial evidence.  As summarized in the ALJ's decision, here, the RFC is adequately supported by the examination findings of Dr. Perdomo, the sparse treatment records, and other opinions from treating and non-treating sources.  As it is not the task of the Court to reweigh the evidence or to opine if the evidence could support an alternative result, the finding should not be disturbed.

*The testimony of the VE*

---

[1] The ALJ summarized the examination:
Dr. Perdomo observed the claimant walking down a hallway without difficulty or need for an assistive device. The claimant was also observed sitting comfortably during the examination and having no difficulty or problems getting on and off the examination table (Exhibit 8F /1). Examination of the back revealed no deformities but moderate tenderness over the lumbar paraspinal muscles. The claimant had full range of motion of the cervical spine but slightly decreased range of motion of the thoracolumbar spine. On neurological examination, the claimant had intact and normal sensory and motor functioning as well as normal deep tendon reflexes. He had normal coordination and station, normal grip strength and fine manipulation, and no neurological deficits with a negative Romberg. Dr. Perdomo assessed the claimant could stand, walk, and sit for 6 hours in an 8-hour workday with normal breaks and could frequently lift and carry but should limit weight lifting to no more than 50 pounds. The claimant should also avoid repetitive bending, stooping, and crouching but did not require an assistive device for ambulation. Dr. Perdomo assessed the claimant should avoid strenuous physical activity and exposure to temperature extremes and humidity changes because of his COPD. Dr. Perdomo recommended smoking cessation and more aggressive treatment for COPD as well as physical therapy and home exercises for back conditioning. Dr. Perdomo presented the following diagnostic impressions: history of chronic back pain with mild musculoskeletal limitations on examination of the thoracolumbar spine, osteoarthritis and degenerative disc disease by history, COPD, nicotine dependence, and insomnia and anxiety (Exhibit 8F/2).
(R. 18).

Plaintiff's final contention is that the VE failed to testify accurately as to the number of jobs available. At hearing, the ALJ posed a hypothetical to the VE, based on the RFC set forth above. After testifying that such a person could not perform any of the claimant's past work (R. 49), the VE was then asked a serious of questions, and answered as follows:

> Q Assume now that the hypothetical individual's equivalent to the claimant's age, education, and vocational history. **Would there be any other work in the local or national economy?**
> **A Yes.** One would be a food and beverage order clerk. That's DOT number 209.567-014. That's in the sedentary category, SVP 2, unskilled. In the national economy for that type of occupation there would be 256,000; in Florida there would be 18,000. Also a surveillance system monitor, DOT number 379.367-010. That's in the sedentary category, SVP of 2, unskilled. For that type of occupation in the national economy there would be 81,000; in Florida there would be 9,000. Also a callout clerk, DOT number 209.667- 014. That's in the sedentary category, SVP of 2, unskilled. For that type of occupation in the national economy there would be 66,000; in Florida there would be 4,200.

(R. 49-50- emphasis added).   Upon cross-examination by Plaintiff's representative, the VE testified as follows:

> Q Ms. Beougher, for instance in the -- on the food and beverage order clerk position of -- you say there's 256,000 nationally, is that for the single position of a food and beverage order clerk, or is that for a group of jobs?
> A That's for a group of jobs. That comes under the category of worker clerk.
> Q How many order clerks, I guess, or positions make up that 256,000 number?
> A Well, there's 11 specialty occupations in that group, if that's what you're asking.
> Q Yes. So, is there any way to really tell how many food and beverage order clerk positions there are?
> A No. That is not broken down, as you mentioned, into a single occupational title.
> Q Okay. And if my memory's correct, and you can check, on the surveillance system monitor, are there five specialty occupations?
> A Let me check. I believe there are six. I'll check. There are six.
> Q And one of those positions would be a lifeguard, right?
> A I do not have a lifeguard --
> Q No?
> A -- that's coming under that category.
> Q Okay. But those six positions make up the 81,000 positions?
> A Yes.
> ATTY: Okay. Thank you. I have no further questions, your honor.

(R. 51-52).

From this, Plaintiff argues that the ALJ could not rely on the VE's testimony because "the vocational expert testified that there was no way of ascertaining the actual number of each of the jobs existing in the economy." (Brief, p. 15). This position is without merit.

In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel,* 190 F. 3d 1224, 1229 (11th Cir. 1999).   Further, the ALJ must articulate specific jobs that exist in national economy that a claimant can perform. *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir.1989). If the ALJ demonstrates the existence of such jobs, the claimant must show that he could not perform those jobs in order to prove disability.  *Jones,* 190 F.3d at 1228. Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a). "The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number." *Brooks v. Barnhart.* 133 Fed.Appx. 669, 670-671 (11th Cir. 2005) *citing* 20 C.F.R. § 404.1512(g).

As is evident from the testimony, the VE opined that there is other work in significant numbers that a person with claimant's RFC could perform.  Although Plaintiff takes issue with the fact that the DOT listing does not contain an "actual number" of each particular job within a particular category, this does not mean that the VE testimony was without foundation.  "The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony." *Bryant v. Commissioner of Social Sec.,* 451 Fed.Appx. 838, 840 (11th Cir. 2012); *see also Curcio v. Commissioner of Social Sec.*, 386 Fed.Appx. 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise.").  Here, the VE testified as to specific jobs, noted that there were thousands of jobs for each of the three identified "types of occupations," and acknowledged that her testimony was based on her "education and experience and

the DOT." (R. 52).   Plaintiff does not offer evidence to contradict the  substance of the testimony of the VE,[2] and a reasonable person would find this evidence sufficient to support the ALJ's conclusion that the specific jobs exist in substantial numbers.  *See Curcio,* 386 Fed. Appx. at 926.  The Court finds no error.

## Conclusion

The administrative decision was made in accordance with proper legal standards and is supported by substantial evidence.  Therefore, the administrative decision is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 10, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[2]Indeed, as Florida is a service economy and Orlando is one of the top tourist destinations in the world, Plaintiff would be hard pressed to argue that, in fact, jobs for food and beverage order clerks are scarce in this region.